# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RODERICK ANDRE McGUIRE,

      Petitioner,                     CASE NO. 2:07-CV-15399

                                        HONORABLE VICTORIA A. ROBERTS

v.                                 UNITED STATES DISTRICT JUDGE

NICK LUDWICK,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR WRIT OF HABEAS CORPUS

Roderick Andre McGuire, ("Petitioner"), confined at the St. Louis Correctional Facility in St. Louis, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, Petitioner challenges his conviction for first-degree felony murder, M.C.L.A. 750.316.

The petition for writ of habeas corpus is **DENIED.**

## I.  Background

Petitioner was convicted in 2004, following a jury trial in the Jackson County Circuit Court.  Petitioner provided a detailed statement of facts from his brief on appeal in the Michigan Court of Appeals, which he has attached to his petition for writ of habeas corpus. [1]  Respondent has not disputed these facts in its answer.  Accordingly, the Court

---

[1]  See Petitioner's Attachment C.  This Court is willing to incorporate the issues and arguments raised in the state appellate court brief that Petitioner has attached to his petition as being part of the application for writ of habeas corpus. *See e.g. Burns v. Lafler,* 328 F. Supp. 2d 711, 717, n. 2 (E.D. Mich. 2004).

will accept the factual allegations contained in the habeas petition insofar as they are consistent with the record. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002). The Court recites verbatim the facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Dittrich v. Woods,* 602 F. Supp. 2d 802, 803 (E.D. Mich. 2009):

> This case arises out of the shooting death of James Crowley in 1980. Defendant drove his brother, who (sic) he knew to be armed, to a certain neighborhood so his brother could commit an armed robbery. Defendant dropped his brother off, then waited for him near a stop sign. During the course of the attempted robbery, Mr. Crowley was shot and killed. Defendant was charged on or about April 4, 2004 with armed robbery and felony murder in connection with the shooting. The armed robbery charge was dismissed but the felony murder charge proceeded to jury trial, at the conclusion of which defendant was found guilty.

> *People v. McGuire,* No. 260421, * 1 (Mich.Ct.App. July 25, 2006).

> Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 477 Mich. 978, 725

N.W.2d 54 (2006)(Kelly J., dissenting).

> Petitioner seeks a writ of habeas corpus on the following grounds:

> I. Mr. McGuire's felony murder conviction must be vacated because the evidence presented at trial was not sufficient to permit a reasonable jury to find that every element of that offense had been established beyond a reasonable doubt.

> II. The trial court gave, over objection, [an] erroneous and misleading instruction on the elements of felony murder and accomplice liability which reversibly prejudiced Mr. McGuire and denied him his due process right to a fair trial.

> III. Should this Court find that Mr. McGuire's challenge to the felony murder and aiding instruction was not preserved for appellate review, it must also find that defense counsel's failure to object denied Mr. McGuire his Sixth

2

Amendment right to the effective assistance of counsel at trial.

IV.  Excessive pre-trial delay denied Mr. McGuire his due process right to a fair trial.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

## III. Discussion

3

**A.  Claim # 1.  The sufficiency of evidence claim.**

Petitioner first contends that there was insufficient evidence to show that he intended to kill or to do great bodily harm to the victim or that he intended to set into motion a force that was likely to cause the victim death or great bodily harm, so as to establish the malice element required for a felony murder conviction.

In rejecting this claim, the Michigan Court of Appeals held that there was sufficient evidence to support a finding of malice, in light of Petitioner' admission that he drove his brother, the principal offender, to an armed robbery, knowing that his brother had a gun.  The Michigan Court of Appeals concluded that these facts alone were sufficient to establish malice, given that participation in an armed robbery -- where a defendant is aware that one of his co-defendants is armed with a deadly weapon -- allows for an inference of malice, because it involves participation in an act where there is a "wanton and willful disregard of the possibility that death or great bodily harm would result." *McGuire,* Slip. Op. at * 2(internal citation omitted).  The Michigan Court of Appeals concluded further that it was immaterial that Petitioner claimed that his brother told him that the gun did not function properly, because the jury was free to disbelieve Petitioner's claimed belief about the functioning of the gun and there was no evidence that the gun was completely inoperative. *Id.* at * 2-3.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

4

crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir.

2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Because a claim of

insufficiency of the evidence presents a mixed question of law and fact, this Court must

determine whether the state court's application of the *Jackson* standard was reasonable.

*See Malcum v. Burt,* 276 F. Supp. 2d 664, 686 (E.D. Mich. 2003).  Finally, in making a

determination whether the state court's application of the *Jackson* standard in resolving

Petitioner's sufficiency of evidence claim was contrary to, or an unreasonable

application of, Supreme Court precedent, this Court must afford the state court's findings

of facts a presumption of correctness unless Petitioner can establish by clear and

convincing evidence that the state court's factual determination was erroneous. *See*

*Williams v. White,* 183 F. Supp. 2d 969, 974 (E.D. Mich. 2002)(internal citations

omitted).

> Under Michigan law, the elements of first-degree felony murder are:
> (1) the killing of a human being;
> (2) with an intent to kill, to do great bodily harm, or to create a high risk of
> death or great bodily harm with knowledge that death or great bodily harm
> is the probable result (i.e., malice);
> (3) while committing, attempting to commit, or assisting in the commission
> of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(citing to *People v.*

*Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

To support a finding under Michigan law that a defendant aided and abetted in the

commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other

5

person;

2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and

3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006)(citing *Carines*, 460

Mich. at 757-58).

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003)(citing *People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W. 2d 636, 642 (1999)).

The Michigan Court of Appeals' rejection of Petitioner's sufficiency of evidence claim was not an unreasonable application of clearly established federal law. The evidence established that Petitioner agreed to participate in an armed robbery with his brother. Petitioner knew that his brother was armed with a gun when he drove him to commit the armed robbery. There was also evidence presented that Petitioner and his brother had committed armed robberies in the past together. A number of cases have held that a defendant's participation in an armed robbery, while either he or his co-defendants were armed with a loaded firearm, manifested a wanton and reckless disregard that death or serious bodily injury could occur. This could support a finding

6

that the defendant acted with malice aforethought, thereby supporting a conviction for felony-murder on an aiding and abetting theory. *See Hill v. Hofbauer,* 337 F. 3d 706, 719-20 (6th Cir. 2003)(intent for felony murder "can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon."); *See also Harris v. Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998)*; People v. Turner,* 213 Mich. App. 558, 572-73; 540 N. W. 2d 728 (1995)*;overruled in part on other grounds People v. Mass,* 464 Mich. 615; 628 N.W. 2d 540 (2001); *People v. Hart*, 161 Mich. App. 630, 635; 411 N.W. 2d 803 (1987); *Meade,* 265 F. Supp. 2d at 858-59; *Redmond v. Jackson,* 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003)(petitioner not entitled to tolling of the AEDPA's statute of limitations on a claim that he was actually innocent of felony-murder, finding that petitioner's act of providing a firearm to be used in an armed robbery demonstrated a wanton and wilful disregard of the fact that a person could be killed or suffer great bodily harm during the course of the robbery).

The mere fact that Petitioner was told by his brother that the gun was not working properly would not defeat a finding of malice on Petitioner's part. Kenneth Phillipi testified that he gave the gun to Petitioner's brother, but denied telling him that the gun did not work. Petitioner did not tell the police in any of his statements that the gun was inoperable, only that it did not work "right" or that it did not "work properly." Most importantly, Petitioner admitted to the police that when "somebody has a gun something bad is going to happen." Because there was no evidence that this gun was inoperable, the jury did not err in concluding that Petitioner acted with the requisite malice to

support his conviction.

Finally, Petitioner appears to argue that there was insufficient evidence to convict him of felony murder, in light of the fact that his brother was acquitted of felony murder and armed robbery. [2]  Under Michigan law, a conviction of a principal is not a prerequisite to a valid conviction of being an aider and abettor. *See People v. Paige,* 131 Mich. App. 34, 39; 345 N.W.2d 639 (1983).  Petitioner could, therefore, be convicted as aider and abettor in the killing, even though the principal defendant was acquitted, so long as the testimony clearly indicated that a murder had been committed and that there was sufficient evidence to conclude that Petitioner aided and abetted in the crime. *See People v. Youngblood,* 165 Mich.App. 381, 389; 418 N.W.2d 472 (1988).  Federal law is in accord on this point. *See Standefer v. United States,* 447 U.S. 10, 20 (1980); *U.S. v. Price,* 258 F. 3d 539, 546 (6ᵗʰ Cir. 2001).  Petitioner is not entitled to habeas relief on his first claim.

### B.  Claims # 2 and # 3.  The jury instruction/ineffective assistance of counsel claims.

The Court will discuss Petitioner's second and third claims together because they are interrelated.  In his second claim, Petitioner contends that the trial judge gave an erroneous and misleading instruction on the elements of felony murder and accomplice

---

[2]  Petitioner's brother was acquitted of felony murder at a first trial.  Because the jury in that case could not reach a verdict on the armed robbery charge, a second trial was conducted, at which time, Petitioner's brother was acquitted of the armed robbery charge.

liability.  In his third claim, Petitioner contends that his trial counsel was ineffective for failing to object to the incorrect instruction.

Taking Petitioner's third claim first, the record establishes that trial counsel objected to the trial court's instruction on felony murder and accomplice liability. Because counsel did, in fact, object to the trial court's instruction, Petitioner's ineffective assistance of counsel claim is without merit. *See e.g. Durr v. Mitchell,* 487 F.3d 423, 440 (6th Cir. 2007).

In his second claim, Petitioner contends that the trial court judge impermissibly blended the instructions on felony murder and aiding and abetting, and in doing so, failed to instruct the jury that they had to find that Petitioner knew that his brother acted with malice at the time that he provided aid and assistance to his brother.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977).  The challenged instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial court record. *Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996).  To

9

warrant habeas relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Scott v. Mitchell*, 209 F. 3d 854, 882 (6th Cir. 2000).  Allegations of trial error raised in challenges to jury instructions are reviewed for harmless error by determining whether they had a substantial and injurious effect or influence on the verdict. *Id.*  Finally, federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

In rejecting Petitioner's claim, the Michigan Court of Appeals noted that the trial court judge gave the correct aiding and abetting and felony murder instructions, even if they were essentially blended together. *McGuire,* Slip. Op. at * 3.  Because the Michigan Court of Appeals found that the instructions given by the trial court accurately reflected Michigan law regarding the elements of felony murder and aiding abetting, this Court must defer to that determination and cannot question it. *See Seymour v. Walker*, 224 F. 3d 542, 558 (6th Cir. 2000).

Moreover, the instructions in their entirety adequately instructed the jurors on the intent necessary to convict Petitioner of aiding and abetting in a felony murder.  The trial court judge instructed the jurors that in order to convict Petitioner of aiding and abetting, they would have to find that he "intended the commission of the crime alleged or must have known the other person intended its commission at the time of giving of the assistance." (Tr. 12/9/2004, pp. 128-29).  Later, when instructing the jurors on the

10

elements of felony murder, the judge instructed the jurors that they would have to find that Petitioner's "brother had one of these two states of mind.  He intended to do great bodily harm to James Crowley, or he knowingly created a very high risk of death or great bodily harm, knowing that death or great bodily harm would be the likely result of his actions." (*Id.* at p. 129).  Because the instructions, when viewed in their entirety, properly instructed the jurors on the elements necessary for establishing that Petitioner had the requisite malice necessary for aiding and abetting in a felony murder that was committed in the course of a robbery, Petitioner is not entitled to habeas relief on this claim. *See Nash v. McKune,* 44 Fed. Appx. 378, 379 (10th Cir. 2002).

### C.  Claim # 4.  The pre-charge delay claim.

In his final claim, Petitioner contends that his right to due process was violated by the twenty four year delay in charging him with this crime.

The Michigan Court of Appeals rejected this claim, primarily because it concluded that there was no evidence on the record that the prosecution intentionally delayed bringing this case to gain tactical advantage.  It also found that Petitioner had failed to even allege intentional delay. *McGuire,* Slip. Op. at * 4.  The Michigan Court of Appeals concluded that Petitioner's allegations involving possible difficulties with witness' memories due to the passage of time "are generally insufficient to establish actual and substantial prejudice." *Id.* (internal quotation omitted).  Moreover, although noting that two key witnesses were dead and no longer available for trial, the Michigan Court of Appeals found that Petitioner did not specify exactly what these witnesses

11

would have said that would have exonerated him. *Id.* Finally, the Michigan Court of Appeals observed that the transcripts of these witnesses' testimony from Petitioner's brother's trial were available and could have been used by Petitioner, but he declined to do so. The Michigan Court of Appeals concluded that Petitioner failed to show that his right to due process was violated by pre-arrest delay. *Id.*

As an initial matter, Petitioner has neither alleged nor established a violation of his Sixth Amendment right to a speedy trial, because he was not actually arrested or charged with this crime until 2004. The Supreme Court has noted that it is "[e]ither a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion,* 404 U.S. 307, 320 (1971). Therefore, although the invocation of the Speedy Trial Clause of the Sixth Amendment need not await indictment, information or other formal charge, the provision of the Speedy Trial Clause does not reach to the period prior to arrest. *Id.*

The Due Process Clause, however, provides a limited role in protecting criminal defendants against "oppressive" pre-arrest or pre-indictment delay. *U. S. v. Lovasco,* 431 U.S. 783, 789 (1977). Proof of prejudice is generally a necessary but not sufficient element of a due process claim involving pre-indictment delay, and the due process inquiry must consider the reasons for the delay as well as prejudice to the accused. *Id.* at 790.

The Sixth Circuit has consistently read *Lovasco* to hold that dismissal for pre-

12

indictment delay is warranted only when the defendant shows: (1) substantial prejudice to his right to a fair trial; and (2) that the delay was an intentional device by the government to gain a tactical advantage. *United States v. Brown*, 959 F. 2d 63, 66 (6th Cir. 1992). The Sixth Circuit has repeatedly held that where the pre-indictment delay is caused merely by negligence on the part of prosecutors or police, no due process violation exists. *U.S. v. Rogers.* 118 F. 3d 466, 476 (6th Cir. 1997) (rejecting the argument that "reckless or negligent disregard of a potentially prejudicial circumstance violates the Fifth Amendment guarantee of due process"); *See also U.S. v. Banks*, 27 Fed. Appx. 354, 357 (6th Cir. 2001)("Our Circuit has recognized that where delay is due to simple negligence and not a concerted effort by the government to gain an advantage, no due process violation exists"). Finally, where a habeas petitioner fails to show that the prosecutor delayed the prosecution for illegitimate reasons, it is unnecessary for a court to determine whether the petitioner satisfies the "substantial prejudice" requirement. *See Wolfe v. Bock,* 253 Fed. Appx. 526, 532 (6th Cir. 2007)(petitioner failed to establish that 15-year delay between murder and his arrest was for illegitimate reasons, as was required to support claim that delay violated petitioner's due process right to a fair trial).

The twenty four year delay in prosecuting Petitioner raises obvious concerns to this Court. However, the main problem with Petitioner's claim is that he has failed to establish that this delay, while excessive, was done intentionally by the prosecutor for the purpose of obtaining a tactical advantage. Indeed, Petitioner's counsel spent almost

13

his entire time at pre-trial hearings conducted on September 10 and October 8, 2004 arguing that Petitioner had been prejudiced by the delay, without offering any argument or evidence that the delay had been done in bad faith.

Petitioner did not even allege that the prosecutor intentionally delayed filing charges to gain a tactical advantage, until he filed his application for leave to appeal to the Michigan Supreme Court.  At that point, Petitioner contended that the prosecution's reason for the delay in filing charges was "dissatisfaction with the available evidence and a desire to develop additional evidence." [3]  To the extent that the prosecutor delayed prosecution to obtain additional evidence, Petitioner would be unable to establish that the delay was improper.  The Supreme Court in *Lovasco* recognized "that the interests of the suspect and society are better served if, absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed sufficient time to weigh and sift evidence to ensure an indictment is well-founded." *United States v. Eight Thousand, Eight Hundred and Fifty Dollars ($ 8,850) in U.S. Currency,* 461 U.S. 555, 563 (1982).  To prosecute a defendant following an investigative delay does not deprive him of due process, even if his defense is somewhat prejudiced by the lapse of time. *Lovasco*, 431 U.S. at 796.

Although Petitioner did not argue before the Michigan Court of Appeals that the delay was intentional, in his statement of facts in his brief on appeal to the Michigan Court of Appeals, Petitioner mentioned that the prosecutor had argued, in response to

---

[3]  *See* Application for Leave to Appeal, p. 5[This Court's Dkt. # 7-2].

14

Petitioner's motion to dismiss, that there was an adequate reason for the delay, "because the current prosecutor disagreed with the prior prosecutor's assessment as to whether the evidence was sufficient to sustain a murder conviction." [4]  In the body of his application for leave to appeal to the Michigan Supreme Court, Petitioner notes that there was "a disagreement among people in the prosecutor's office as to whether or not Mr. McGuire's statements to the police provided sufficient evidence to sustain a felony murder prosecution." [5]

Disagreements between a former prosecutor and his or her successor over whether there is sufficient evidence to prosecute a defendant for a crime is a legitimate reason for a delay in filing charges. *See State v. Kuri,* 846 S. W. 2d 459, 469-70 (Tex. App. 1993)(Drug defendant claiming that due process rights were violated by one-year delay from withdrawal of indictment to filing of new indictment did not establish that prosecution sought to gain tactical advantage over defendant; delay was occasioned by reassignment of case within prosecutor's office, from attorney who did not believe it was strong enough to be pursued to another attorney who did); *See also Tanner v. Yukins,* No. 2005 WL 2994353, * 1, 17 (E.D. Mich. November 7, 2005)(petitioner failed to show that five year delay in bringing prosecution was intended to cause a tactical advantage, when initial prosecutor declined to issue arrest warrants in the fall of 1995 on the ground that there was insufficient evidence to charge petitioner, but arrest warrant was issued in

---

[4]  *See* Brief on Appeal, p. 2, Petitioner's Attachment C.

[5]  *See* Application for Leave to Appeal, p. 27 [This Court's Dkt. # 7-2].

2000 after a new prosecutor had taken office in 1997). A trial court is not permitted under the Due Process Clause to terminate a criminal prosecution simply because it disagrees with the prosecutors' decisions as to when to seek an indictment. *Lovasco*, 431 U.S. at 790. Prosecutors are under no duty to file charges before they are satisfied that they will be able to establish the defendant's guilt beyond a reasonable doubt. *Id.*

In reviewing the preliminary examination and trial transcripts, it appears as though Petitioner had been in prison off and on since 1980. When Petitioner was paroled in 2004, Melvin Hartman, an investigator with the Jackson County Prosecutor's Office and a member of their Cold Case Unit, and a former Jackson Police Officer who had been involved in the original murder case, received a notification from the Michigan Parole Board that Petitioner had been paroled. Hartman testified that the cold case unit deals with unresolved homicides which involves "suspicious deaths" and re-investigates those cases. The notification from the Parole Board about Petitioner's release from prison apparently jogged Hartman's memory about the murder case, which remained unsolved. (Preliminary Exam. Tr., Vol. I, pp. 41-42, 48, Trial Tr., 12/6/2004, p. 6). Hartman spoke with Hank Zavislak, the Jackson County Prosecutor, about the case. Zavislak asked Hartman to go speak with Petitioner about the case, in an attempt to "close out the Crowley case." Specifically, Mr. Zavislak wanted to know what happened that particular night, because "there was still a gap within that case as to what actually transpired that night." The prosecutor also wanted to learn more about the circumstances surrounding Petitioner's brother's death in 1990.(Preliminary Exam. Tr., Vol. I, p. 48;

16

Preliminary Examination Tr., Vol. II, pp. 5-6).  Hartman went to Muskegon to speak with Petitioner in the presence of his parole officer.  Petitioner was offered immunity in exchange for his willingness to talk about the crime, but Petitioner refused to speak with Hartman.(Preliminary Exam. Tr., Vol. I, pp. 49-50).  Petitioner was formally charged with the crime.

Courts have considered the bringing of criminal charges after a case has been reviewed by a "cold case unit" and a determination has been made by that unit to go forward with a criminal prosecution to be an acceptable explanation for pre-indictment delay. *See Bierenbaum v. Graham,* No. 2008 WL 515035, * 22 (S.D.N.Y. February 25, 2008).

In addition, on the second and third days of trial, the prosecutor made a record that there were legitimate reasons for the delay in prosecution, based upon the fact that Petitioner had been offered a deal to testify against his brother at the time of his brother's trial, but later backed out of the deal.  At the time, Petitioner was being held on CCW [carrying a concealed weapon], armed robbery, and possession of cocaine charges.  After Petitioner's brother was acquitted, a decision was made not to prosecute Petitioner because he was going to serve prison time for other convictions, coupled with the fact that the prosecutor's office did not want to put the victim's family through the ordeal of another trial.(Tr. 12/7/2004, pp. 6-7; Tr. 12/8/2004, pp. 6-8).  As the First Circuit noted, "ongoing investigations are not the only constitutionally acceptable explanations for pre-indictment delays." *U.S. v. DeCologero,* 530 F. 3d 36, 78 (1st Cir. 2008); *cert. den.*

17

129 S. Ct. 615 (2008).  Considerations for a victim or her family are valid reasons for a pre-charging delay. *See State v. Gonzales,* 156 P. 3d 407, 415 (Alaska 2007).  In addition, the prosecution's decision to forego charging Petitioner because he was already serving a prison sentence on other charges was a valid reason for pre-charging delay. *See e.g. Arnold v. McCarthy*, 566 F. 2d 1377, 1385 (9th Cir. 1978).

Petitioner is not entitled to habeas relief on his pre-charging delay claim; he has failed to establish that the prosecutor intentionally delayed filing charges to gain a tactical advantage.  Because Petitioner has failed to show that the prosecutor delayed the prosecution for invalid reasons, it is unnecessary for this Court to determine whether Petitioner can establish that he was substantially prejudiced by the delay. *Wolfe v. Bock,* 253 Fed. Appx. at 532.

Nonetheless, Petitioner is unable to establish prejudice in prosecuting his case. The Sixth Circuit observed that: "[T]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative." *Rogers,* 118 F. 3d at 477, n. 10.

Petitioner first claims that because of the passage of time, many of the original documents from the police investigative file have been destroyed, witnesses cannot be located, and the memories of the available witnesses have diminished.  However, "a vague assertion that memories have diminished, witnesses have been lost, and documents have been misplaced does not establish actual prejudice from a pre-charge delay." *Randle v. Jackson,* 544 F. Supp. 2d 619, 631 (E.D. Mich. 2008)(citing *United*

18

*States v. Beszborn,* 21 F. 3d 62, 67 (5th Cir. 1994); *United States v. Mask,* 154 F. Supp. 2d 1344, 1348 (W.D. Tenn. 2001)).

Other than in conclusory fashion, Petitioner failed to show with any specificity how any information contained within the police file would have assisted his case, nor has he shown how any of the witnesses who did testify at his trial had any significant memory problems. Petitioner does allege that he was unable to present an alibi defense, because his alibi witnesses, namely his brother and sister-in-law, were now deceased. However, as the Michigan Court of Appeals noted in its opinion, the transcripts from Petitioner's brother's trial or trials were available. At these trials, Petitioner's brother and sister-in-law testified that Petitioner was with them at the time of the crime and that none of them was involved in the murder. The fact that Petitioner could have presented an alibi defense by using the prior transcribed testimony of these witnesses defeats any claim of prejudice from the delay. *See e.g. Cousart v. Hammock,* 745 F. 2d 776, 778 (2nd Cir. 1984).

Finally, Petitioner confessed his involvement in this crime to at least three different police officers. In light of this, Petitioner failed to show that he was substantially prejudiced by the delay in prosecution. *See U.S. v. Bartlett,* 794 F. 2d 1285, 1292-93 (8th Cir. 1986).

The Michigan Court of Appeals rejected Petitioner's claim, ruling that Petitioner failed to show an intent by the prosecutor to gain a tactical advantage and that he had not shown prejudiced. Because these findings are supported by the record, this Court

19

concludes that the Michigan Court of Appeals' resolution of Petitioner's pre-charging delay claim was neither contrary to, nor an unreasonable application of federal law. Petitioner is not entitled to habeas relief on his pre-charging delay claim. *Randle,* 544 F. Supp. 2d at 631.

## IV.  Conclusion

The Court denies the Petition for Writ of Habeas Corpus.  The Court will, however, grant Petitioner a Certificate of Appealability with respect to his fourth claim involving pre-charge delay.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002).

Although the Court believes that its decision in denying Petitioner habeas relief on his fourth claim was correct, it will nonetheless grant Petitioner a Certificate of Appealability on his pre-charge delay claim for the following reason.  Justice Kelly

20

dissented from the Michigan Supreme Court's decision to deny Petitioner leave to appeal

and indicated that she would have granted Petitioner's application for leave to appeal

with the Michigan Supreme Court as to his pre-charge delay claim. *People v. McGuire,*

477 Mich. at 978.  In light of the fact that Justice Kelly dissented from the decision to

deny leave to appeal and would have granted leave to appeal with regard to this claim,

Petitioner has shown that jurists of reason could decide this issue differently or that the

issue deserves encouragement to proceed further. *See Robinson v. Stegall,* 157 F. Supp.

2d 802, 820, n. 7 & 824 (E.D. Mich. 2001)(habeas petitioner entitled to certificate of

appealability from district court's determination that state appellate court reasonably

applied federal law in determining that any Confrontation Clause error was harmless,

where one judge on the Michigan Court of Appeals dissented and indicated that he

would have reversed petitioner's conviction; dissent showed that a reasonable jurist

found that the issue should have been decided differently); *See also Tankleff v.*

*Senkowski,* 135 F. 3d 235, 242 (2nd Cir. 1998)(pre-AEDPA habeas petitioner entitled to

certificate of probable cause to appeal, where intermediate state appellate court split

three to two on the *Miranda* issue and the propriety of the prosecutor's summation);

*Palmariello v. Superintendent, M.C.I. Norfolk,* No. 1988 WL 42393, * 2 (D. Mass. April

11, 1988)(habeas petitioner entitled to certificate of probable cause where the

Massachusetts Supreme Judicial Court's affirmance of his conviction was non-

unanimous; certificate would be issued "[I]n light of the dissenting opinion filed by a

member of the Commonwealth's highest appellate court").  The Court will therefore

21

grant a Certificate of Appealability to Petitioner with respect to his fourth claim involving pre-charge delay.

For the reasons stated in this opinion, the Court denies Petitioner a Certificate of Appealability with respect to his first, second, and third claims; jurists of reason would not find this Court's resolution these claims to be debatable or that they should receive encouragement to proceed further. *Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

The Court also grants Petitioner leave to appeal *in forma pauperis* (IFP).  A court may grant IFP status if it finds that an appeal is taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).  Good faith requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Id.*  Because this Court grants a Certificate of Appealability to Petitioner on his fourth claim, this Court also finds that any appeal by Petitioner would be undertaken in good faith, and leave is granted to appeal *in forma pauperis*. *See Brown v. United States,* 187 F. Supp. 2d 887, 893 (E.D. Mich. 2002).

## V.   <u>ORDER</u>

The Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

A Certificate of Appealability is **GRANTED** with respect to Petitioner's fourth claim

and **DENIED** with respect to his first, second, and third claims**.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

**IT IS ORDERED.**

                                                    /s/ Victoria A. Roberts
                                              Victoria A. Roberts
                                              United States District Judge

Dated:  August 11, 2009

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 11, 2009. <br><br> s/Linda Vertriest <br> Deputy Clerk |